UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| SHAWANNA SHEPARD | CIVIL ACTION NO. 5:17-CV-01604 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| JOHNSON & JOHNSON, ET AL. | MAG. JUDGE MARK L. HORNSBY |

**RULING**

Pending before the Court is a Motion for Summary Judgment filed by Defendants Johnson & Johnson and Ethicon, Inc. ("Defendants") [Doc. No. 17]. Plaintiff Shawanna Shepard ("Plaintiff") has filed an opposition [Doc. No. 25]. Defendants have filed a reply to the opposition [Doc. No. 28]. The matter is fully briefed and the Court is prepared to rule.

**I.   FACTS AND PROCEDURAL BACKGROUND**

Plaintiff contends that she suffered injuries when a defective and unreasonably dangerous PROCEED Ventral Patch (the "surgical mesh") was implanted during a hernia repair surgery on December 9, 2015, at University Health Shreveport.

On December 11, 2017, Plaintiff filed suit against Defendants, alleging that they are liable for her injuries as the developers, manufacturers, and distributors of the defective surgical mesh. On December 14, 2018, Defendants filed this Motion for Summary Judgment in which they contend Plaintiff's claim is time-barred under Louisiana law.

**II.   LAW AND ANALYSIS**

    **A.   Summary Judgment**

Summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B.   Prescription

Plaintiff alleges that she sustained damages because Defendants' defective surgical mesh was implanted during her hernia repair surgery on December 9, 2015, causing her pain, a hernia recurrence, and requiring additional surgery.  Defendants contend that Plaintiff's medical records establish that these injuries manifested no later than October 4, 2016, yet Plaintiff waited until December 11, 2017, to file this lawsuit.  Thus, Defendants contend that Plaintiff's lawsuit is time-barred by Louisiana Civil Code article 3492, which states: "Delictual actions are subject to a liberative prescription of one year.  This prescription commences to run from the day injury or damage is sustained."

In support of their argument, Defendants offer Plaintiff's medical records and deposition

testimony. Her October 4, 2016 medical record states that she noted "pain" and reported being "worried because she had an umbilical hernia repair that she thinks is coming back because when she sits up she has a bulge around her umbilical area that is mildly tender." [Doc. No. 17-3, p. 2]. During that same visit, her treating physician noted a "recurrence of umbilical hernia" with a plan of care, including a "referral to surgery clinic." [Id., p. 4].

During her deposition, she confirmed that by October 20, 2016, she believed she sustained injuries because her December 9, 2015 hernia repair failed. [Doc. No. 17-6, p. 4, 5].

On November 10, 2016, her physician documented a call during which Plaintiff "voiced understanding" that her umbilical hernia had returned and that she would require additional surgery. [Doc. No. 17-11, p. 4, 5].

Her medical records from December 6, 2016, show that she began experiencing pain and knew her hernia had recurred several months before this December 6, 2016, visit. [Doc. No. 17-12, p. 2].

Defendants conclude that this medical record and deposition evidence establishes that Plaintiff's injuries manifested no later than October 4, 2016. They assert that date triggered the running of prescription under Louisiana law because prescription begins to run "at the time at which the plaintiff has information sufficient to excite attention and prompt further inquiry." *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir. 2000).

Further, Defendants argue "prescription runs from the date on which [Plaintiff] first suffered actual and appreciable damage, even though [she] may thereafter come to a more precise realization of the damages [she] has already incurred." *Guillot v. Aventis Pasteur, Inc.*, No. 02-3373, 2013 WL 4508003, at *10-11 (E.D. La. Aug. 22, 2013) (quoting *Harvey v. Dixie Graphics,*

3

*Inc.*, 593 So.2d 351, 354 (La. 1992)).

Finally, Defendants assert, "It is not the rule in Louisiana, however, that the prescriptive period does not begin until conclusive, dispositive proof of a causal connection between the suspected injury and the putative tortfeasor is established. Rather, actual or constructive knowledge of the tortious act, the resulting injury, and the causal connection between the two is the benchmark for beginning the prescriptive period." *Carter v. Matrixx Initiatives*, *Inc.*, 391 Fed. App'x 343, 345-346 (5th Cir. 2010).

Defendants conclude that since the undisputed material facts establish that by October 20, 2016, and certainly no later than November 10, 2016, Plaintiff evinced a firm, unwavering and objectively reasonable belief that her pain and hernia recurrence were due to a failure of her December 9, 2015 surgery with the surgical mesh, Plaintiff waited too long to file this lawsuit on December 11, 2017.

Not so fast, says Plaintiff. She contends that she had no reason to attribute any of her symptoms or the recurrence of the hernia *to Defendants' surgical mesh* until viewing a television advertisement related to litigation involving hernia mesh implanted during hernia repair surgery on December 12, 2016. Plaintiff was not told that hernia mesh was going to be implanted during the hernia repair surgery on December 9, 2019, and never discussed any complications connected to the implanted hernia mesh with any health care provider. No healthcare provider ever indicated to Plaintiff that the symptoms she was suffering from in the Fall of 2016 or the hernia recurrence were in any way related to her hernia repair surgery on December 9, 2015, or to the Defendants' surgical mesh in particular. The earliest date that Plaintiff became aware of the possible association between her condition and Defendants' product was December 12, 2016, when she

4

saw the television advertisement, according to Plaintiff. Furthermore, it was not until January 3, 2017, that Plaintiff sustained the damages of an additional hernia repair surgery. Additionally, there is nothing in the medical records to demonstrate Plaintiff had knowledge that Defendants' surgical mesh was defective and unreasonably dangerous or was the cause of her injuries prior to December 11, 2016. Nowhere in her deposition does she testify that she was aware of the connection between Defendants' surgical mesh and her injuries at any time prior to December 12, 2016, when she saw the television commercial. Plaintiff concludes that this case was filed within a year of December 12, 2016, and, therefore, within the applicable prescriptive period.

Defendants respond that dispositive proof of a causal connection between an alleged injury and the tortfeasor is not required before filing suit. Instead, the relevant question is when Plaintiff had sufficient information to "excite attention and prompt further inquiry." *Carter v. Matrixx Initiatives, Inc.*, 391 Fed. App'x 343, 345-46 (5th Cir. 2010). They contend that Plaintiff learned nothing new about her injury after her medical treatment in October and November 2016, and she possessed all of the information necessary "to excite attention and prompt further inquiry" by November 10, 2016. They conclude that the standard under Louisiana law is not that prescription begins to run when the plaintiff sees a lawyer advertisement that provides no additional information to what the plaintiff already knew.

The Court agrees with Plaintiff. Prescriptive statutes are strictly construed against prescription and in favor of maintaining the cause of action sought to be dismissed, "'Of the two possible constructions, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement, should be adopted.'" *Terrebonne Parish School Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5thCir. 5/10/2002) (quoting *Louisiana Health Service and*

*Indem. Co. v. Tarver*, 635 So.2d 1090, 1098 (La. 4/11/1994)).

The Louisiana Supreme Court has held that the doctrine of *contra non valentem* can suspend the prescriptive period when a plaintiff is unable to exercise the cause of action at the time of accrual for good cause:

> The Court has recognized four instances where *contra non valentem* can apply: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's actions; (2) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectively to prevent the creditor from availing himself of his cause of action; or (4) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Specialized Loan Servicing, LLC v. January*, 119 So.3d 582, 585 (La. 6/28/2013).

Based on the discovery rule, "[P]rescription does not accrue as it does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable." *Griffin v. Kinberger*, 507 So.2d 821, 823 (La. 5/28/1987).

The earliest possible indication that a plaintiff may have suffered some wrong does not start the running of prescription. *Knaps v. B & B Chemical Co., Inc.*, 828 F.2d 1138, 1140 (5th Cir. 1987) (quoting *Jordan v. Employee Transfer Corp.*, 509 So.2d 420, 434 (5th Cir. 1987)). Prescription commences when a plaintiff has actual or constructive knowledge of the tortious act, the damage, and the causal relation between the tortious act and the damage. "Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Campo v. Correa*, 828 So.2d 502, 510-511 (La. 6/21/2002). Unless a plaintiff knew or should have known through the exercise of reasonable diligence, "[m]ere apprehension by plaintiff that something is wrong is not sufficient to start

6

prescription...." *Gunter v. Plauche*, 439 So.2d 437, 439 (La. 10/17/1983).

A plaintiff may know that an unwanted condition has developed after medical treatment, but "prescription will not run as long as it was reasonable for the plaintiff not to recognize that the condition might be treatment related." *Campo v. Correa*, 828 So.2d at 511; see also *Griffin v. Kinberger*, 507 So.2d at 823-824.

A case closely on point is *Cortez v. Depuy*, No. 15-617, 2016 WL 633665 (E.D. La. 2/17/2016). There the defendant argued that the plaintiffs' claims were untimely against the manufacturer of surgical bone cement used in a knee replacement surgery. In December of 2011, the plaintiff, Melva Cortez ("Cortez"), underwent total knee replacement surgery and began to experience pain and discomfort in the knee a few months later. *Id*.at *1. Plaintiff scheduled an appointment with an orthopedic surgeon on November 5, 2013, and was told that the tibial component of the prosthetic knee was loose, and revision surgery would be necessary. *Id*. On February 28, 2014, revision surgery was performed and it was noted that, "[t]he cement on the medial tibial plateau had not integrated." *Id*. The plaintiffs filed suit approximately a year after the revision surgery on February 26, 2015. *Id*. Defendant argued that the plaintiffs' claims were prescribed because the prescriptive period began when Cortez was informed that revision surgery was necessary. *Id*. The court denied summary judgment finding, "[b]ecause … Cortez lacked actual or constructive notice of the causal connection between the bone cement and her failed surgery, prescription did not commence until that connection could be made: February 28, 2014." *Id*.at *4.

In another case on point, the Louisiana Supreme Court in *Cole v. Celotex Corp.*, 620 So. 2d 1154 (La. 7/1/1993), held that the prescriptive period does not commence until a person has

sufficient information to determine the cause of an injury. The plaintiff, Wilburn L. Roberston ("Robertson"), worked for a company at where asbestos was present. *Id*.at 1155. Robertson had an x-ray that showed plaque or scarring in his lungs, but the treating physician was unable to determine whether the cause was asbestosis or other causes. *Id*. at 1155-1156. Robertson was not diagnosed with asbestosis until December of 1985. *Id*. at 1157. The court applied the doctrine of *contra non valentem* and concluded, "[T]hat … Robertson cannot be chargeable with knowledge that he had asbestosis until late 1985 or early 1986." *Id*. at 1158.

Similarly, in the case at hand, although Plaintiff may have known that the first hernia surgery had not been successful more than a year before she filed suit, she lacked actual or constructive notice of the causal connection between Defendants' surgical mesh and her failed surgery. Defendants have presented no evidence that Plaintiff believed or suspected that her symptoms or the recurrence of the hernia were linked to their surgical mesh, prior to December 12, 2016. There is nothing in Plaintiff's medical records to indicate that she or her healthcare providers discussed Defendants' surgical mesh, let alone blamed the surgical mesh for her injuries.

Defendants argue that it is very suspicious that when Plaintiff testified that television advertising prompted her to contact her current counsel, she could not recall when she saw the advertisement and she could not recall the specific content of the advertisement. Yet she now claims that she saw the advertisement on December 12, 2016, *exactly* 364 days before the date she filed suit – just enough time to try to construct an argument against prescription.

However, a court's function at the summary judgment stage is not to evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes but to determine, "'[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

8

sided that one party must prevail as a matter of law.'" *Petrohawk Properties, L.P. v. Chesapeake Louisiana L.P.*, 2010 WL 11590911, *2 (W.D. La. 8/4/2010), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252; and *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1960 (11th Cir. 1/26/2004), quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252.

Since Plaintiff filed this case within one year of seeing the television advertisement about litigation involving hernia repairs and hernia mesh, and within a year of the additional hernia repair surgery on January 3, 2017, the Court finds that the case was filed within the pertinent prescriptive period.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 17] is DENIED.

MONROE, LOUISIANA, this 15th day of February, 2019.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**