# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| **SHAWANNA SHEPARD** | **CIVIL ACTION NO. 5:17-1604** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JOHNSON & JOHNSON, ET AL.** | **MAG. JUDGE MARK L. HORNSBY** |

## RULING

This is a products liability action brought by Plaintiff Shawanna Shepard ("Shepard") against Defendants Johnson & Johnson and Ethicon, Inc. ("Ethicon"). Pending before the Court is Ethicon's Motion for Summary Judgment [Doc. No. 45]. Shepard did not oppose the motion.

For the following reasons, the Motion is GRANTED, and Shepard's claims are DISMISSED WITH PREJUDICE.

## I.   FACTUAL AND PROCEDURAL HISTORY

On December 9, 2015, Shepard underwent surgery by Dr. Kathryn Richardson to repair an umbilical hernia. During surgery, Ethicon's PROCEED® Ventral Patch ("PVP") was implanted. Shepard contends that each of the Defendants is a "manufacturer" of PVP within the meaning of the Louisiana Products Liability Act ("LPLA"), LA. REV. STAT. § 9:2800.51, *et seq.*

Dr. Richardson was aware that there is a chance of recurrence of the hernia, but testified that there is a lesser chance using mesh rather than performing a primary repair. [Doc. No. 45-3, Exh. A, Deposition of Dr. Kathryn Richardson, p. 30]. Shepard was advised by Dr. Richardson and also on the consent form that recurrence was a risk of hernia repair. *Id.* at pp. 34-35, 40, 79.

After surgery and at the post-operative visits, Dr. Richardson did not find any infection at the site of the PVP, nor did she find any indications of erosion or extrusion of the PVP. *Id.* at p. 61.

After suffering pain, in October 2016, Shepard sought medical treatment and was referred to the surgical clinic. [Doc. No. 25-4]. She had a CT scan [Doc. Nos. 25-5 & 25-6] and was then referred to Dr. Forrest Dean Griffen. A second hernia repair was performed under Dr. Griffen's supervision as attending physician. [Doc. No. 25-9]. Dr. Griffen testified that the hernia recurrence "could have occurred whether mesh [PVP] was used or not," and he could not "say for sure" what caused the recurrence. [Doc. No. 45-4, Exh. B, Deposition of Dr. Forrest Dean Griffen, p. 46].

On December 11, 2017, Shepard filed suit against Ethicon in this Court.

The case has proceeded in the ensuing two years.

Under the applicable scheduling order, Shepard had until September 9, 2019, to identify her experts to Defendants and until September 13, 2019, to provide Defendants with her expert reports. She sought and obtained an extension of these deadlines to September 23 and 27, 2019, respectively [Doc. No. 42].

Shepard did not produce reports from any expert by the deadline of September 27, 2019.

On October 3, 2019, Ethicon filed the instant Motion for Summary Judgment [Doc. No. 45]. Under the Court's Notice of Motion Setting [Doc. No. 46], Shepard's opposition was due on October 24, 2019. No opposition was filed.

This matter is now ripe.

## II. LAW AND ANALYSIS

### A. Summary Judgment

Summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

In products liability actions under Louisiana law, the "plaintiff bears the burden of proving [the defendant's] fault, if any, and that the defendant's product caused her injuries, [and] all essential elements of her claim against the manufacturer, upon which she bears the burden of proof at trial." *Hebert v. Miles Pharmaceuticals*, 1994 U.S. Dist. LEXIS 248, *3-4 (E.D. La. Jan. 13, 1994); *see also Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1100 (5th Cir. 1991). Rule 56 requires Plaintiff to come forward with sufficient evidence at the summary judgment stage to meet her burden of demonstrating facts to support the essential elements underlying each

individual claim. *Id.* The moving party is not required to produce evidence to negate the existence of material facts when the non-moving party bears the burden of proof at trial. *Broussard v. P&G Co.*, 463 F. Supp. 2d 596, 604, n. 2 (W.D. La. 2006). Instead, the moving party can satisfy its summary judgment burden by "simply pointing out the absence of evidence supporting the non-moving party's case." *Id.*

Unless the moving party meets its initial burden, the Court may not grant a motion for summary judgment, even if the motion is unopposed. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995). However, pursuant to Local Rule 56.2, since no party filed an opposition and statement of contested material facts, Ethicon's statement of uncontested material facts is deemed admitted for purposes of this motion. LR 56.2. ("All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.").

**B.    LPLA**

Under the LPLA, "[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product . . . ." LA. REV. STAT. § 9:2800.54. A manufacturer is liable if its product is found unreasonably dangerous in one of four ways: construction or composition, design, inadequate warning or nonconformity with an express warranty. *Id.*; *see also Holloway v. Midland Risk Ins. Co.*, No. 36262-CA (La. App. 2 Cir. 2002), 832 So.2d 1004, 1011 (citing *Young v. Logue*, 94-0585 (La. App. 4 Cir. 5/16/95), 660 So.2d 32). In this case, Shepard asserts all four claims.

Ethicon argues that it is entitled to summary judgment on all such claims. First, Ethicon contends that Shepard cannot prevail on her defective construction and design claims without expert testimony. Second, Ethicon contends that Shepard cannot prevail on her inadequate warning claim because she knew that a hernia could recur when her surgeon implanted the PVP. Finally, Ethicon contends that Shepard cannot prevail on her breach of express warranty claim because she has no evidence of an express warranty.

### 1. Defective Design

For a product to be "unreasonably dangerous" in design under the LPLA, Shepard must demonstrate (1) a feasible alternative product design existed, (2) at the time the product left the manufacturer's control, (3) that would have prevented Plaintiffs' claimed damages, and (4) that would have satisfied the statutorily required risk-utility test. LA. REV. STAT. § 9:2800.56; *Reynolds v.* Bordelon, 2014-2371 (La. 2015), 172 So.3d 607, 614, 614 n.19. If a plaintiff fails to present evidence of an alternative design, then he cannot prevail on a design defect claim. *Id.* at 614.

In this case, Ethicon points out that Shepard has not provided expert or technical evidence to support the existence of an alternative design. Such failure "to demonstrate an alternative design" is "fatal to [a plaintiff's] claim that the [defendant's] product was unreasonably dangerous due to a design defect." *Theriot v. Danek Medical, Inc.*, 168 F.3d 253, 256 (5th Cir. 1999). While Shepard's implanting and revising surgeons, Drs. Richardson and Griffen, have been deposed, neither surgeon testified that there was any design defect in the PVP. Nor did they propose alternative designs.

Shepard has not responded to Ethicon's Motion for Summary Judgment with any evidence of an alternative design. Therefore, Ethicon is entitled to summary judgment on her claim of defective design under the LPLA.

### 2. Construction Defect

A product is "unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." LA. REV STAT. § 9:2800.55; *see Reynolds*, 172 So.3d at 613, 613 n.16. "The 'unreasonably dangerous in construction or composition' provision of the LPLA provides a remedy for damages caused by a product that is defective due to a mistake in the manufacturing process." *Stahl v. Novartis Pharmaceuticals Corp.,* 283 F.3d 254, 262-63 (5th Cir. 2002) (citing LA. REV. STAT. § 9:2800.55).

To prove this theory, Shepard must show (1) what Ethicon's specifications or performance standards were for the PVP and (2) how the PVP implanted in Shepard "deviated from these standards so as to render it unreasonably dangerous." *Reynolds*, 172 So.3d at 613.

Shepard has not pointed to any evidence, through an expert or otherwise, that address specifications or deviation therefrom. The Court's own review of the record does not produce any such evidence. Accordingly, she has failed to raise a genuine issue of material fact for trial, and Ethicon is entitled to summary judgment on her LPLA composition or construction defect claim.

### 3. Inadequate Warnings

In order to succeed on an inadequate warning claim, a plaintiff must prove: (1) inadequacy of the warning; and (2) that the inadequate warning was the cause of her injuries. *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098-99 (5th Cir. 1991); *see also* LA. REV. STAT. § 2800.54 and LA. REV. STAT. § 2800.57; *Stahl*, 283 F.3d at 261; *Bertrand v. Eli Lilly & Co.*, No. CV 12-0853, 2013 WL 12184299, at *8 (W.D. La. Mar. 13, 2013), report and recommendation adopted as modified, No. CIV.A. 12-0853, 2013 WL 4093556 (W.D. La. Aug. 13, 2013) ("First, the plaintiff must show that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician. . . . Second, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury.").

Under the "learned intermediary" doctrine, as applied in Louisiana, the manufacturer of a medical device generally satisfies its duty to provide warnings to consumers by reasonably informing physicians of potential risks associated with its products. *Stahl*, 283 F.3d at 265-266. The physician acts as a learned intermediary between the manufacturer and the patient—the decision to use the drug or medical product in a particular circumstance "rests with the doctor and the patient and not the manufacturer." *Kampmann v. Mason,* No. 05-CA-423 (La. App. 5 Cir. 2006), 921 So. 2d 1093, 1095. In order to demonstrate causation, "the plaintiff must show that a proper warning would have changed the decision of the treating physician, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Willett*, 929 F.2d at 1099.

In this case, Shepard has presented no evidence that additional or different warnings would have changed Dr. Richardson's treatment decision. The evidence shows that, prior to Shepard's surgery, Dr. Richardson was aware of potential risks associated with PVP, including pain and recurrence. [Doc. No. 45-3, Richardson Depo., p. 30]. Dr. Richardson further weighed the risks versus benefits of using PVP, and she testified that she stood by her decision to use that product. *Id.* at pp. 30, 40, 79 & 93. There is no evidence that different product warnings would have changed Dr. Richardson's decision, and Ethicon is entitled to summary judgment on Shepard's LPLA claim of inadequate warnings.

### 4. Express Warranty

Under the LPLA, a product "is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue." LA. REV. STAT. § 9:2800.58.

> To survive summary judgment, a plaintiff is required to demonstrate, or provide evidence to create a genuine issue of material fact regarding the following: (1) the manufacturer made an express warranty regarding the product, (2) the plaintiff was induced to use the product because of that warranty, (3) the product failed to conform to that express warranty, and (4) the plaintiff's damage was proximately caused because the express warranty was untrue. . . .

*Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 452 (5th Cir. 2002).

There is no evidence to indicate the existence of an express warranty that Shepard relied on, or that any such express warranty was untrue or proximately caused her claimed damages. In response to Ethicon's interrogatories, Shepard made the general assertion that, "Defendants expressly warranted that [PVP] was a safe and effective treatment for hernias" in

"documents and materials including promotional materials" and that "Defendants withheld information from Plaintiff and Plaintiff's healthcare providers." [Doc. No. 43-2].

However, there is no evidence to indicate what express warranty Shepard contends she relied upon or how that reliance led to her injury. Further, there is no evidence that an express warranty induced anyone else, including Dr. Richardson, to use PVP during Shepard's hernia repair surgery. Dr. Richardson further testified that recurrence and pain are known complications with the use of any mesh product in hernia repair. Shepard has failed to meet her burden. Therefore, Ethicon is entitled to summary judgment on Shepard's LPLA claim of breach of express warranty.

### 5. Causation

Even if Shepard could raise a genuine issue of material fact for trial on one or more of her LPLA claims, she must also establish causation. Unless a product or product feature is "relatively uncomplicated . . . such that a layman could readily grasp" it, expert testimony is required to prove causation in a products liability lawsuit. *Stewart v. Capital Safety USA*, 867 F.3d 517, 521 (5th Cir. 2017). A medical device, such as PVP, is not a relatively uncomplicated product, and, thus, Shepard had to produce expert testimony to show that its use caused her injuries. As Shepard has failed to produce expert testimony, Ethicon is entitled to summary judgment on her LPLA claims on this basis as well.

### C. Redhibition

In addition to her LPLA claims, Shepard asserts a claim of redhibition under Louisiana law. The LPLA preserves redhibition as a cause of action only to the extent the claimant seeks to recover the value of the product or other economic loss. *Pipitone v. Biomatrix, Inc*., 288 F.3d

239, 251 (5th Cir. 2002). To prevail, a plaintiff "must prove: '(1) the thing sold is absolutely useless for its intended purposes or that its use is so inconvenient that it must be supposed that he would not have bought it had he known of the defect; (2) that the defect existed at the time he purchased the thing, but was neither known or apparent to him; (3) that the seller was given the opportunity to repair the defect.'" *Alston v. Fleetwood Motor Homes of Indiana, Inc.*, 480 F.3d 695, 699 (5th Cir. 2007); LA. CIV. CODE ART. 2520.

Here, Shepard has no proof of any defect, much less that that PVP was absolutely useless. Accordingly, Ethicon is entitled to summary judgment on Shepard's redhibition claims as well.

### D. Other State Law Theories of Recovery

Finally, Shepard seeks to recover under a number of other theories which are barred under the LPLA. Specifically, Shepard seeks recovery based on state law claims of negligence, breach of warranty of fitness, and breach of implied warranty. However, the LPLA is the only theory available against manufacturers for injuries caused by medical devices. LA. REV. STAT. § 9:2800.52 ("A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]"); *see also Stahl*, 283 F.3d at 261-62 ( negligence is no longer viable as an independent theory of recovery against a manufacturer); *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997) ("Louisiana law eschews all theories of recovery in this case except those explicitly set forth in the LPLA."); *Jenkins v. Int'l Paper Co.,* 41,566 (La. App. 2 Cir. 11/15/06), 945 So. 2d 144, 147; *Ervin v. Guidant Corp.*, 08-03783, 2010 WL 3081306 (E.D. La. Aug. 5, 2010)("[C]ourts applying Louisiana law have frequently dismissed cases that assert theories of

fraud, negligence, and misrepresentation because such claims are outside the scope of the LPLA."). Therefore Ethicon is entitled to summary judgment dismissing all of Shepard's remaining non-LPLA claims.

## III. CONCLUSION

For the foregoing reasons, Ethicon's Motion for Summary Judgment [Doc. No. 45] is GRANTED, and Shepard's claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 29th day of October, 2019.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE